UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHOMAS T. WINSTON,

        Petitioner,

  v.                                    Case No. 18-cv-1938-pp

RANDALL R. HEPP,

        Respondent.

---

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 18), DENYING PETITIONER'S MOTION TO TAKE JUDICIAL NOTICE (DKT. NO. 25), DISMISSING CASE AS UNTIMELY UNDER 28 U.S.C. §2244(d)(1)(A) AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

On December 7, 2018, the petitioner, who represents himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2004 conviction in Milwaukee County Circuit Court for first-degree intentional homicide and armed robbery. Dkt. No. 1 at 1. After the court had screened the petition, the respondent filed a motion to dismiss, arguing that the petition was not timely filed. Dkt. No. 18. The petitioner argues that he has newly discovered evidence showing his actual innocence, which he asserts allows the court to consider the merits of his claims. Dkt. No. 21. Because the *habeas* petition was not timely filed and because the petitioner he has not met the demanding standard for a gateway claim of actual innocence, the court will dismiss the petition.

1

## I. Background

    A.    State Case

This court recounted the petitioner's history of state court filings in its September 25, 2019 order denying his motions for an evidentiary hearing, for discovery, to appoint counsel and for release pending relief. Dkt. No. 24. As stated in that order,

> [o]n July 23, 2004, a jury found the petitioner guilty of first-degree intentional homicide and armed robbery. State v. Winston, Milwaukee County Circuit Court, Case No. 03CF00686 (available at: https://wcca.wicourts.gov). The Milwaukee County Circuit Court judge sentenced the petitioner to life in prison on September 7, 2004. Id. The clerk entered judgment the next day. Id.
>
> With the assistance of appointed counsel, petitioner raised ineffective assistance of counsel claims, challenged the sufficiency of the [evidence] and objected to the sentence in a postconviction motion and a direct appeal. State v. Winston, Wisconsin Court of Appeals, Case No. 2005AP000923 (available electronically at: https://wscca.wicourts.gov). The circuit court denied postconviction relief. Id. On June 27, 2006, the Wisconsin Court of Appeals affirmed the judgment and order denying relief. Id. The petitioner did not file a petition for review with the Wisconsin Supreme Court. Dkt. No. 1 at 2-3.
>
> In February of 2008, the petitioner filed a petition for writ of *habeas corpus* in the Wisconsin Court of Appeals. Dkt. No. 1 at 3. The court denied the petition *ex parte* on March 5, 2008. Id. The Wisconsin Supreme Court denied review on August 18, 2008. State v. Winston, Wisconsin Court of Appeals, Case No. 2008AP000332 (available electronically at https://wscca.wicourts.gov).
>
> On January 27, 2009, the petitioner filed a motion for new trial under Wis. Stat. §974.06, challenging the effectiveness of his post-conviction counsel. Dkt. No. 2-1 at 7. The trial court denied the motion on March 23, 2009, and the Wisconsin Court of Appeals later affirmed that order. Id. at 12, 13. The Wisconsin Supreme Court denied review on September 27, 2011. State v. Winston, Wisconsin Court of Appeals, Case No. 2009AP000887 (available electronically at https://wscca.wicourts.gov).

The petitioner filed a second motion for new trial on September 7, 2012. Dkt. No. 1 at 4. After the circuit court denied his motion, he appealed but later moved to voluntarily dismiss the appeal on December 20, 2013. State v. Winston, Milwaukee County Circuit Court, Case No. 03CF006686 (available electronically at https://wcca.wicourts.gov). The state court docket shows that the petitioner voluntarily dismissed his appeal so the Wisconsin Innocence Project could file a DNA motion. Id. (1-31-2014 docket entry). The state court record reflects that the defendant and the government entered a stipulation for DNA testing at the defendant's expense on March 24, 2014. Id.

On November 23, 2016, the petitioner filed a third motion for new trial. Dkt. No. 2-1 at 1. The trial court denied the motion on November 30, 2016, and the Wisconsin Court of Appeals summarily affirmed the decision on May 31, 2018. Id. at 2-3. The petitioner's motion argued that his discovery of an old police report of an armed robbery and murder committed by someone named "Wallstreet" outside a check cashing store two years prior to the petitioner's offense date constituted newly discovered evidence warranting a new trial. The Wisconsin Court of Appeals rejected the motion as meritless and as procedurally barred. Dkt. No. 2-1 at 4-5. The Wisconsin Supreme Court denied his petition for review on November 13, 2018.

The petitioner filed this petition on December 7, 2018, alleging actual innocence, denial of his constitutional right to a fair and impartial jury, and denial of his constitutional right to effective assistance of counsel. Dkt. No. 1 at 5-9.

Dkt. No. 24 at 2-4.

B. Federal *habeas* petition

The federal *habeas* petition raises three grounds for relief. First, the petitioner argues that he is actually innocent of the crimes of conviction, "in light of newly discovered evidence." Dkt. No. 1 at 5. He alleges that a person named "Wallstreet" actually committed the crime and that "[e]ight years later his identity was discovered through the Wisconsin Innocence Project revealing a criminal history." Id. The second ground for relief asserts that the state court

3

denied him a fair and impartial jury. Id. at 6. He explains that one juror, Jerry Gray, was the petitioner's former high school teacher but remained silent when the *venire* was asked if anyone knew the petitioner. Id. Relatedly, the third ground charges that the petitioner's trial counsel provided ineffective assistance when he did not question Gray about the relationship, even though the petitioner informed counsel that Gray was his former teacher. Id. at 8.

    C.    <u>Respondent's Motion to Dismiss (Dkt. No. 18)</u>

The respondent argues that the court must dismiss the petition because the petitioner filed it more than four years too late. Dkt. No. 19 at 5. The respondent contends that the statute of limitations period began on the date on which the petitioner's conviction became final, which was thirty days after the June 27, 2006 Wisconsin Court of Appeals decision—July 27, 2006. Id. at 6. He argues that the one-year time period expired on July 27, 2007 and that the petitioner did not file this federal *habeas* petition until December 7, 2018—almost eleven and a half years later. Id. at 7. The respondent recognizes that the petitioner's state court filings would qualify for the statutory tolling provision of §2244(d)(2), but calculates that even tolling the time during which all the state filings were pending, the petitioner filed the petition over four years and seven months after the one-year period elapsed. Id. at 8. The respondent asks the court not to equitably toll the limitations period, arguing that the petitioner has not identified extraordinary circumstances and has not explained the lengthy gaps between filings. Id. at 10.

The respondent also contends that the court should not allow the petitioner's claim for actual innocence to serve as a "gateway" to excuse his untimeliness. Id. at 11. The respondent asserts that the petitioner's actual innocence claim is "baseless" because "he offers no reliable new evidence to prove his innocence." Id. at 12. The respondent says that the petitioner's evidence about Wallstreet is not "new;" "[i]t was considered and rejected by the Wisconsin Court of Appeals on direct review in 2006 in the context of [the petitioner's] challenge to the sufficiency of the evidence to convict him." Id. at 13. He further argues that the "new" evidence is not probative of the petitioner's innocence because as the Wisconsin Court of Appeals explained,

> 'Multiple eyewitnesses testified that Winston committed the crime. The fact that a person named Wallstreet may have also committed an armed robbery outside a check-cashing store two years before Winston committed this crime has no bearing on Winston's culpability here.'

Id. at 13-14 (quoting dkt. no. 19-6 at 3).

Alternatively, the respondent maintains that the petitioner procedurally defaulted grounds two and three because he failed to raise those claims in the Wisconsin Supreme Court. Id. at 15. The respondent observes that the petitioner did not petition for review in the Wisconsin Supreme Court after the Wisconsin Court of Appeals denied his challenge to the seating of juror Gray and his counsel's failure to question Gray. Id. at 17.

The petitioner does not contest the respondent's calculations regarding the limitations period or the respondent's assertion that the petition is untimely. Dkt. No. 21. Instead, the petitioner argues that the proof of his

5

actual innocence allows the court to excuse both the petition's untimeliness and any procedural default. Id. at 2. He explains that in 2012, he discovered evidence regarding "Wallstreet's" actual identity and past criminal history. Id. at 3. This evidence is "new", he says, because he did not discover it until eight years after his trial and six years after his direct appeal. Id. at 3 (citing dkt. no. 2-1 at 30).

The petitioner argues that this discovery is "very important" because the petitioner had argued at his trial that someone else committed the crime. Id. The petitioner criticizes the respondent's assertion that "multiple eyewitnesses" testified against him; he says that, at trial, one of his co-defendants (James Green) actually testified that "Wallstreet" committed the crime. Id. at 4. The petitioner says that a different co-defendant, Jerry Lee, testified that he was afraid of "Wallstreet" because "Wallstreet" would harm his family if he gave Wallstreet up to authorities. Id. The petitioner asserts that Jerry Lee testified that the petitioner committed this crime in exchange for a favorable plea deal. Id. The petitioner observes that at the time of the trial, he did not know "Wallstreet's" identity or his past criminal history. Id. The new evidence, he says, shows that "Wallstreet" had an armed robbery and gun possession charge and ties to a gang known for armed robberies. Id. at 4-5.

The petitioner also attacks the remaining evidence the state presented at his trial. The petitioner argues that the other eyewitness at the scene, Ruby Adams, testified that she saw "a black male with a dark skin complexion robbing the victim." Id. at 5 (citing dkt. no. 2-1 at 57-58). The petitioner states

6

that he does not have a dark skin complexion, but that "Wallstreet" was described in a police report as being a black male with a dark skin complexion. Id. (citing dkt. no. 2-1 at 31-32). Moreover, the petitioner says that the jury never heard Ruby Adams's testimony about the photo array she viewed on November 17, 2003, where she could not identify the petitioner despite his inclusion in the array. Id. at 6-7 (citing dkt. no. 2-1 at 59). The petitioner observes that at trial, the state called James Green's sister, who testified that Green told her of the petitioner's involvement in the crime, using the petitioner's nickname, "Web." Id. at 6. The petitioner notes that two additional people overheard this conversation—Andre Harris and Jerome Whitehead—both of whom claimed that James Green discussed the crime but did not mention the nickname, "Web." Id. Finally, the petitioner says that the jury never heard that he denied involvement in the crime for almost eighty minutes "while being tired" before confessing to the lead detective, or of the interrogating detective's "very different versions of [the petitioner's] interrogation surrounding his alleged statement." Id. at 7.

The petitioner says that "the Schlup v. Delo, 513 US 298 (1995) actual innocence gateway does not require that the evidence be newly discovered." Id. at 8. He says he needs only to show that the evidence is reliable and that it was not presented at trial. Id. (citing Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003); Gladney v. Pollard, 799 F.3d 889, 898-899 (7th Cir. 2015)). The petitioner says that evidence about Wallstreet's identity and past criminal history, along with other evidence never presented to the jury, establishes a

7

probability that no reasonable jury would have found the petitioner guilty beyond a reasonable doubt. Id. at 9. The petitioner asserts that the respondent does not want the court to consider his claims on their merits, because they would earn him relief. Id. at 12.

## II. Analysis

### A. Statute of Limitations under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year limitations period for petitioners seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). The one-year period begins to run from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D). The petitioner does not say which of these four provisions is the one that governs when his limitations clock began. He has not claimed that some state action prevented him from timely filing his *habeas* petition or that he is asserting a right newly recognized by the Supreme Court.

8

He *does* claim that he has newly discovered evidence—"Wallstreet's" true identity. But he does not argue that the limitations period began to run on the date that he could have learned of this information through the exercise of due diligence. Even if the petitioner had made that argument, it would not be successful. The petitioner says that he found out "Wallstreet's" true identity in 2012, but he did not file his petition until 2018—six years later.

Further, the evidence of Wallstreet's true identity relates only to the petitioner's first ground for relief—"actual innocence"—which is not a constitutional claim. As the Seventh Circuit recently has explained,

> [t]he Supreme Court has flagged the possibility that actual innocence might be enough to justify collateral relief in a capital case on the theory that the execution of one who is actually innocent violates the Eighth Amendment. [Herrera v. Collins, 506 U.S. 390,] at 405, 113 S.Ct. 853. Apart from that potential exception, however, the Court's 'habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.

Perrone v. United States, 889 F.3d 898, 903 (7th Cir. 2018) (quoting Herrera, 506 U.S. at 404); see also Lund v. United States, 913 F.3d 665, 668 (7th Cir. 2019) (re-affirming actual innocence as "only a gateway" and that "[f]raming the exception as a gateway presupposes that a petitioner will have underlying claims separate from the claim that he is actually innocent."). Because the petitioner's claim for actual innocence is not a free-standing claim for relief, his delayed discovery of Wallstreet's identity would not trigger a later start of the limitations period under §2244(d)(1)(D). To avail himself of that later start date, the petitioner would need to show that he had newly discovered evidence of the

9

factual predicate for grounds two and three of his petition—those concerning juror Gray. But as to those claims, the petitioner has alleged that he knew juror Gray was his former teacher at the time of his trial and informed his counsel of as much during the trial. See Dkt. No. 1 at 8. The petitioner cannot claim that he recently discovered the factual predicate for grounds two and three, which means he cannot avail himself of the later start date for the limitations period provided for by 28 U.S.C. §2244(d)(1)(D).

That leaves 28 U.S.C. §2244(d)(1)(A), which provides that the one-year period begins to run from the date the petitioner's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. The Wisconsin Court of Appeals denied the petitioner's direct appeal on June 27, 2006. Dkt. No. 19-2. The petitioner did not file a petition for review with the Wisconsin Supreme Court; his time for doing so expired thirty days after the Court of Appeals' decision. See Wis. Stat. §808.10(1). His one-year clock for filing a federal *habeas* petition began the day that time expired. Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) ("with respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes "final" under §2244(d)(1)(A) when the time for seeking such review expires[.]"). The petitioner's time for filing his federal *habeas* petition expired one year later, on July 27, 2007. The petitioner did not file this *habeas* petition until December of 2018—almost eleven and a half years after the clock ran out.

AEDPA's one-year time limitation can be "tolled," or paused, in certain circumstances; under 28 U.S.C. §2244(d)(2), "[t]he time during which a

10

properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." The court has reviewed the history of the petitioner's state court filings. He didn't make any of those filings prior to July 27, 2007—the date on which his one-year limitations period expired. Those motions did not toll the one-year limitations period because the clock already had run. See Graham v. Borgen, 483 F.3d 475, 482-83 (7th Cir. 2007) (post-conviction motion filed after one-year deadline "had no tolling effect whatsoever on the AEDPA statute of limitation."). Even if the court were to exclude all the time during which the petitioner had a state court action "pending" for purposes of statutory tolling, the petition would still be roughly four-and-a-half years past due.[1]

---

[1] The clock ran for about eighteen months between July 27, 2006 and February 13, 2008—when he filed for a writ of *habeas corpus* in state court. Had the time not expired, the clock would have tolled until the Wisconsin Supreme Court denied review on August 20, 2008. Had the time not expired, five months would have run between August 20, 2008 and January 27, 2009, when the petitioner filed a Wis. Stat. §974.06 motion. The clock would have tolled until the Wisconsin Supreme Court denied review on September 24, 2011. Had the time not expired, eleven months would have run until the petitioner filed a second motion for new trial on September 7, 2012. The clock would have tolled from September 7, 2012 until the petitioner voluntarily dismissed his appeal in exchange for a stipulation on DNA testing on March 24, 2014. Had the time not expired, the clock would have run for about thirty-one months until the petitioner filed his third motion for new trial on November 23, 2016. The clock would have tolled until December 4, 2018 and the petitioner filed his petition three days later. Even if the limitations period had not expired on July 27, 2007, there would have been some sixty-five months (18 + 5 + 11 + 31), or approximately five-and-a-half years, during which *no* state motions were pending, that would have expired prior to the date the petitioner filed here in federal court. That's four-and-a-half years more than the statute allows.

The petitioner's only recourse is for the court to excuse his untimely filing. It may do so in one of two ways: by invoking the doctrine of equitable tolling, or by finding that the petitioner has demonstrated his actual innocence.

B. <u>Equitable Tolling</u>

A court may invoke the doctrine of equitable tolling if the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010). "Equitable tolling is an extraordinary remedy and so 'is rarely granted.'" <u>Obriecht v. Foster</u>, 727 F.3d 744, 748 (7th Cir. 2013) (quoting <u>Simms v. Acevedo</u>, 595 F.3d 774, 781 (7th Cir. 2010)). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." <u>Mayberry v. Dittman</u>, 904 F.3d 525, 529-30 (7th Cir. 2018) (citing <u>Menominee Indian Tribe of Wisconsin v. United States</u>, —U.S.—, 136 S. Ct. 750, 755-56 (2016))."The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." <u>Socha v. Boughton</u>, 763 F.3d 674, 683 (7th Cir. 2014) (internal quotations omitted). The remedy is "rare" and "'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing.'" <u>Id.</u> (quoting <u>Nolan v. United States</u>, 358 F.3d 480, 484 (7th Cir. 2004)). A district court must "evaluate the circumstances holistically, considering 'the entire hand that the petitioner was dealt' rather than taking each fact in isolation."

12

Gray v. Zatecky, 865 F.3d 909, 912 (7th Cir. 2017) (quoting Socha, 763 F.3d at 686)).

The petitioner has not asked the court to apply the doctrine of equitable tolling, and none of his pleadings describe any extraordinary circumstances beyond his control that prevented him from timely filing the petition. The petitioner's numerous state court filings show that he knows how to file pleadings in court. While the many state court filings indicate that the petitioner persistently litigated his case, he has not explained why there were significant gaps between his various efforts to attack the state conviction and sentence. He has not explained why he waited eleven and a half years before filing in federal court. The court will not apply the doctrine of equitable tolling.

    C.    Actual Innocence

The petitioner argues that he has evidence that he is innocent, and that this should excuse the untimely filing and any procedural default. "Actual innocence is an equitable exception that renders the time limit set forth in section 2244(d)(1) inapplicable." Arnold v. Dittman, 901 F.3d 830, 836 (7th Cir. 2018) (citing McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)). It "is merely a gateway through which a court can consider a petitioner's otherwise barred claims on their merits." Lund, 913 F.3d at 668 (citing Herrera, 506 U.S. at 404-05). "[T]enable actual-innocence gateway pleas are rare." McQuiggin, 569 U.S. at 386.

> A claim of actual innocence must be both credible and founded on new evidence. *Schlup,* 513 U.S. at 324, 115 S. Ct. at 865. To be credible, the claim must have the support of "reliable evidence— whether it be exculpatory scientific evidence, trustworthy

13

> eyewitness accounts, or critical physical evidence." *Ibid.* That evidence must also be new in the sense that it was not before the trier of fact. *Ibid.*; Gladney, 799 F.3d at 898. The petitioner's burden is to show that, in light of this new evidence it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

Id. at 836-37. The gateway is narrow; a petitioner must present "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Gladney, 799 F.3d at 896 (quoting Schlup, 513 U.S. at 316.)

In support of his claim for actual innocence, the petitioner submitted (1) a memorandum recounting a November 2012 interview with James Green, dkt. no. 2-1 at 23-24; (2) a copy of a June 11, 2012 open records request made by the Wisconsin Innocence Project seeking documents related to a 2001 felony case for Damien U. Sanders, dkt. no. 2-1 at 27; (3) the Milwaukee Police Department's July 25, 2012 response to the open records request, id. at 28-29; (4) a Milwaukee Police Department incident report from 2001 naming Damien Sanders as a suspect in an armed robbery, id. at 30-38; (5) an August 31, 2012 affidavit from a "Geometry L. Milton" stating that while he was incarcerated at Green Bay Correctional institution, James Green said police made him "lie on" the petitioner, id. at 39; (6) a November 21, 2012 affidavit from a "Maurice D. Stokes" stating that while in the Milwaukee County Jail, James Green told him the police made him lie about the petitioner's involvement in this crime, id. at 41; (7) a November 17, 2003 police report recounting an interview with Jerry Lee's sister, LaTosha Gray, id. at 42-43; (8) a November 16, 2003 police report

recounting a custodial interrogation of James Green, id. at 44-47; (9) a November 15, 2003 police report recounting an interview with James Green's sister, Taquita Hodges, id. at 49-52; (10) a November 15, 2003 police report recounting an interview with Andrae A. Harris, id. at 53; (11) a November 15, 2003 police report recounting an interview with Jerome Whitehead, id. at 53-56; (12) a November 15, 2003 incident report recounting an interview with eyewitness Ruby Adams, id. at 57-58; (13) a police report recounting that on November 17, 2003, police showed Ruby Adams a photo array that contained the petitioner's photo, but that Adams could not identify anybody in the array, id. at 59; (14) an affidavit from a Ms. Rose Marie Winston stating that she attempted to retrieve school records for the petitioner and received criticism from petitioner's appellate counsel, id. at 60-61; and (15) correspondence with the Milwaukee Public Schools showing that the petitioner attempted to verify that Mr. Jerry Gray taught the petitioner during the 2001-02 school year, id. at 62-67.

None of this evidence is the sort of reliable evidence strong enough to undermine the court's confidence in the outcome of the trial. The petitioner has not submitted affidavits from Jerry Lee or James Green—the petitioner's co-defendants—officially recanting their trial testimony. The petitioner instead submits James Green's interview with the Wisconsin Innocence Project, in which he told law students that "Wallstreet"—not the petitioner—actually committed the robbery. Dkt. No. 2-1 at 23. But these statements were made in an informal interview; they do not carry the same weight and reliability as

15

statements made under penalty of perjury. While the petitioner submits affidavits from other prisoners claiming that James Green admitted to lying about the petitioner, these are second-hand accounts similarly lacking in indicia of reliability.

The petitioner's "new" evidence about the identity of Wallstreet does not bolster the petitioner's argument that "Wallstreet" committed *this* crime. The petitioner's evidence of "Wallstreet's" identity is the Wisconsin Innocence Project memorandum from November of 2012. Dkt. No. 2-1 at 23. From the memorandum, it appears that James Green identified Damien Sanders as "Wallstreet." Id. The April 2001 police report identified "Damien Sanders" as an identified suspect in an armed robbery committed near the scene of the 2003 crime. Dkt. No. 2-1 at 30 (2001 robbery occurred at the 3700 block of Vliet St. in Milwaukee; 2003 crime occurred at 3400 block of Vliet St. in Milwaukee). The other police documents show that Damien Sanders may have had an affiliation with the Young Guns gang. Id. at 29.

But this "evidence" discovered in 2012 does not exonerate the petitioner; it does not place the petitioner somewhere else at the time of the crime; it does not explain surveillance footage showing the petitioner at the scene. There is no DNA evidence linking Damien Sanders to this crime. There is no eyewitness testimony placing Damien Sanders at the scene of *this* crime. There is no admission from Sanders that he committed the crime. The evidence does not explain why the petitioner confessed to the crime. The court concedes that if Green had testified differently at trial, and if the petitioner had known of

16

Wallstreet's identity, and if the defendant's lawyer could have brought in evidence of Wallstreet's history (which is questionable, given the rules of evidence), it may have given the jury something to think about. But the evidence the petitioner has presented is not the "smoking gun" evidence the petitioner believes it to be. It is not the "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" necessary to pursue a gateway claim of actual innocence. Schlup, 513 U.S. at 324. The evidence does not meet the demanding standard of showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.

The court will deny the petition as untimely.

### III. Motion to Take Judicial Notice (Dkt. No. 25)

On February 28, 2020, the petitioner filed a motion asking the court to take "judicial notice pursuant to Fed. R. Evid. 201(a)." Dkt. No. 25. He asserted that certain facts were "not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Id. at 1. He asks the court to take "judicial notice" of case law that describes the actual innocence standard, id. at 1-2; that Green and Green's sister discussed the crime in the presence of two witnesses but that the petitioner's nickname never came up as the person responsible for the homicide, id. at 2; that the two witnesses didn't testify at trial and that the jury never knew that the petitioner's nickname hadn't come up in the discussion between Green and his sister, id.; that Ruby Harris told police she might be able to identify the person who committed the crime if she could see him again,

17

id.; that two days after the crime, Ruby Harris viewed a photo array containing the petitioner but didn't pick anyone out, id. at 2-3; that the jury wasn't made aware that Harris didn't pick anyone from the array, id. at 3; that the petitioner pointed out all this information in his *habeas* brief, id.; that at the beginning of his trial, the members of the *venire* were asked if anyone knew the petitioner, and no one raised a hand, id. at 3-4; that the Wisconsin Court of Appeals conceded that one of the petitioner's jurors was his former high school teacher, id. at 4; that the trial court never questioned Gray about his relationship with the petitioner, id.; that the petitioner was seventeen when he was arrested, id.; that he was seventeen when he went to trial, id.; that another federal judge had issued a decision regarding an undisclosed history between a juror and a defendant, id. at 4-5; that the petitioner identified the issue with juror Gray in his petition before the other judge issued his decision, id. at 5; and that the Court of Appeals issued a decision contrary to well established federal law in refusing to give him an evidentiary hearing on the Gray issue, id.

"A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" General Elec. Capital Corp. v. Lease Resolution Corp, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). "Judicial notice" is an evidentiary shortcut. It allows a court to take note of facts about which no one could disagree—the fact that the Governor of Wisconsin is Tony Evers, the fact

18

that Madison is the capitol of Wisconsin, the fact that the sun rises in the east and sets in the west—so that parties and courts don't waste time trying to prove things that are indisputable.

The petitioner asks the court to take judicial notice of certain judicial decisions. The court agrees that those decisions exist, but that doesn't mean that the court interprets those decisions like the petitioner does, or that they provide him with any relief. The petitioner also asks the court to take judicial notice of facts that are not known within the general territorial jurisdiction of this court, and that—contrary to the petitioner's assertions—are not capable of ready and accurate determination by resort to sources whose accuracy cannot be questioned. The court cannot look in a dictionary or an almanac or an encyclopedia to confirm the facts the petitioner has listed. The petitioner is asking the court to take judicial notice of *arguments* and *inferences*. That is not what judicial notice is for. And even if the court did take judicial notice of all these facts, it would not change the reality that the petitioner waited too long to file for federal *habeas* relief.

The court will deny this motion.

**IV. Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate

19

whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 472, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petition was untimely under 28 U.S.C. §2244 or that the petitioner has not presented evidence demonstrating his actual innocence.

## IV. Conclusion

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 18.

The court **DENIES** the petitioner's motion to take judicial notice. Dkt. No. 25.

The court **ORDERS** this case is **DISMISSED** as untimely under 28 U.S.C. §2244(d)(1)(A).

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 30th day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**